**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

DIGITAL IMPACT, INC.,

    Plaintiff,

v.

BIGFOOT INTERACTIVE, INC.,

    Defendant.

No. C 05-0636 SBA

**ORDER**

[Docket No. 71]

Defendant Bigfoot Interactive, Inc. (Bigfoot) has filed a motion for summary judgment of non-infringement [Docket No. 71] of U.S. Patent 6,449,634 (634 patent), entitled "Method and System for Remotely Sensing the File Formats Processed by an E-Mail Client."[1] After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motion for summary judgment of non-infringement is granted.

### BACKGROUND

The plaintiff and patentee, Digital Impact, Inc.,[2] and the defendant, Bigfoot, are competitors utilizing similar e-mail sensor technology in a field known as permission-based e-mail marketing. "Permission-based e-mail marketing" involves mass distribution of promotional and advertising materials via e-mail to recipients who have indicated a willingness to receive such materials (or presumably have not taken steps to opt-out of such promotions). E-mail marketers have found that e-mails employing images are more likely to generate responses than text-only e-mails. They therefore seek to detect and collect information on those e-mail recipients capable of processing and displaying

---

[1] A copy of the patent may be found at Docket No. 73, Ex. 2 (Dresner Decl.).

[2] After the complaint was filed, both parties either merged or were acquired by other corporate entities. Digital Impact is now "Digital Acxiom" and Bigfoot is now "Epsilon Interactive LLC." For purposes of clarity and consistency, the parties continue to identify themselves as they were known at the time of the complaint.

graphical images to more effectively target their advertisements. The patent-in-suit purports to do just this. When an e-mail recipient receives and opens an e-mail, the patented process claims to direct the information regarding the capabilities of the recipient's e-mail client, *i.e.*, whether it can process graphical images, to be communicated back to the sender of the e-mail message. The abstract of the patent states

> The present invention relates to the processing of E-mail messages over a telecommunications network. More particularly, the present invention relates to the detection and monitoring of file formats which can be processed and displayed at an E-mail client. Specific embodiments include, sending an E-mail message to the E-mail client, determining at the E-mail client a file format that the E-mail client can process and display, and indicating to the E-mail sensor server the file format that the E-mail client can process and display. Once the file format is determined, subsequent E-mail messages maybe [sic] of the same file format. The file format could be hyper text mark up language (HTML) statements or dynamic HTML (DHTML) statements or Java applets. The method may also include monitoring the status of the E-mail message received at the E-mail client.

Docket No. 54, Ex. 1 (Abstract of the 634 patent).

In other words, the patent claims a process allowing the sender to discern the file format an e-mail client utilizes so that the sender may develop a database of e-mail recipients who in the future may be sent image advertisements and those who will be sent text-only advertisements.

Digital Impact brings this action claiming Bigfoot is infringing claims 21 through 33 of the 634 patent. On April 6, 2007, the Court held a *Markman* hearing to construe the disputed terms of the patent. The Court subsequently issued a claim construction order on April 13, 2007. *See* Docket No. 68. The most significant term construed by the Court was "E-mail client," determining it to mean "a computer or similar electronic device with software on it for receiving, processing and displaying E-mail messages and operated by a human user either by virtue of previously programmed software that allows it to operate automatically or by virtue of direct action of the human user." *Id.*

**LEGAL STANDARDS**

**1.    Patents**

A patent confers the right to exclude others from making, using, or selling the invention defined by the patent's claims. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006), *cert.*

1 *denied*, 127 S. Ct. 2062 (2007); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). A patent must describe the exact scope of an invention and its manufacture to secure to a patentee all to which he or she is entitled, and to apprise the public of what is still open. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996). These objectives are served by two distinct elements of a patent document. First, it contains a specification describing the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the same. *See* 35 U.S.C. § 112. Second, a patent includes one or more claims, which particularly point out and distinctly claim the subject matter which the applicant regards as his or her invention. *See id.*

## 2.   Patent Infringement

A determination of patent infringement is a two-step analysis: first, the meaning of the claim language is construed (generally at what is referred to as a *Markman* hearing); second, the claim as construed is compared to the accused device or process. *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007); *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1372 (Fed. Cir. 2006).

As to the second step, infringement occurs when a properly construed claim reads on the accused product. *See Monsanto Co.*, 459 F.3d at 1334. To establish literal infringement, every element and limitation of the claim must be present in the accused device. *See Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006); *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *see also Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1167 (2006). "Equivalence" in this context means that the difference between the claimed invention and the accused product or method is insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result

3

1  as each claim limitation of the patented product or method. *See AquaTex Indus., Inc. v. Techniche
2  Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007); *Abraxis Bioscience*, 467 F.3d at 1379.

### 3.   Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007); *Sevenson Envtl. Serv., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1364 (Fed. Cir. 2007). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1366 (Fed. Cir. 2001), *cert. denied*, 535 U.S. 1073 (2002). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380 (Fed. Cir. 2007); *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Crown Operations*, 289 F.3d at 1375.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Processed Plastics Co. v. United States*, 473 F.3d 1164, 1170 (Fed. Cir. 2006); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000). A conclusory statement on the ultimate issue does not create a genuine issue of fact. *Processed Plastics*, 473 F.3d 1164, 1170. Moreover, a party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Liebel-Flarsheim*, 481 F.3d at 1377; *Crown Operations*, 289 F.3d

4

at 1375.

**ANALYSIS**

Bigfoot seeks judgment as a matter of law that its e-mail services do not infringe independent claims 21 or 30 of the 634 patent (and by extension all dependent claims of the patent, *i.e.*, claims 22-29 and 31-33)[3] because it does not perform at least three steps of claims 21 and 30. In particular, Bigfoot

---

[3] If an independent claim is not infringed, claims dependent on that independent claim cannot be found to be infringed. *See Minnesota Mining & Mfg. Co. v. Chemque, Inc*., 303 F.3d 1294, 1300 (Fed. Cir. 2002). Claims 22 through 29 and claims 31 through 33 state:

22. The method of claim **21** wherein said storing step includes storing said unique message identifier and associating said identifier with said client's E-mail address.

23. The method of claim **22** wherein a response is generated from said E-mail client to said E-mail server each time said E-mail client opens said E-mail message and said storing step further comprises storing a count that tracks the number of times said E-mail client opens said E-mail message.

24. The method of claim **21** wherein said response further comprises a type and version of an E-mail program executing on said E-mail client, and wherein said storing step further includes storing said type and version of said E-mail program in said database.

25. The method of claim **21** wherein said mark up language text part is an HTML statement.

26. The method of claim **21** wherein said mark up language part is a DHTML statement.

27. The method of claim **21** wherein said image in said image tag is an HTML statement.

28. The method of claim **21** wherein said image is a 1x1 pixel.

29. The method of claim **21** wherein the public network is the Internet.

31. The method of claim **30** wherein said mark up language text part is an HTML statement.

32. The method of claim **30** wherein said mark up language part is a DHTML statement.

33. The method of claim **30** wherein the public network is the Internet.

contends the "receiving and opening," the "determining," and the "sending a response" steps, what are labeled steps "2," "3," and "4" of claims 21 and 30, are performed by the e-mail recipients rather than itself. Independent claims 21 and 30 read, respectively:

> 21.   A method for sending and tracking E-mail messages, said method comprising;
> [1] sending an E-mail message from an E-mail server to an E-mail client over a public network, said E-mail message including a mark up language text portion and an image tag, said image tag comprising an image, a unique message identifier and the E-mail client's E-mail address;
> [2] receiving and opening said E-mail message at said E-mail client;
> [3] determining, at said E-mail client, whether the E-mail client can process and display said image;
> [4] sending a response to the E-mail server over the public network, said response including said unique message identifier and the E-mail client's E-mail address;
> [5] receiving said response at said E-mail server; and
> [6] storing in a database accessible to the E-mail server an indication that said message was received and opened.
>
> 30.   A method for sending and tracking E-mail messages, said method comprising;
> [1] sending an E-mail message from an E-mail server to an E-mail client over a public network, said E-mail message including a mark up language text portion and a java object tag, said java object tag comprising a unique message identifier and the E-mail client's E-mail address;
> [2] receiving and opening said E-mail message at said E-mail client;
> [3] determining, at said E-mail client, whether the E-mail client can process said java object tag;
> [4] if the E-mail client can process said java object tag, sending a response to the E-mail server over the public network, said response including said unique message identifier and the E-mail client's E-mail address;
> [5] receiving said response at said E-mail server; and
> [6] storing in a database accessible to the E-mail server, said unique message identifier, [and] the client's E-mail address.

Docket No. 73, Ex. 2 (634 Patent).

Bigfoot's position is that the 634 patent is a fatally flawed "divided claims" patent, meaning that the claims of the patent are infringed only by aggregating the conduct of more than one actor. *See generally* Mark A. Lemley et al., *Divided Infringement Claims*, 33 AIPLA Q.J. 225 (Summer 2005). It argues that where there are independent parties, *i.e.*, where one does not control the acts performed

---

Docket No. 73, Ex. 2 (634 Patent).

6

by the other, neither of the parties can be held to be an infringer. Bigfoot contends that entities other than itself or those over which it has control, *i.e.*, the e-mail recipients, must perform steps of the patented method, such as opening the e-mail. It therefore maintains that as a matter of law it is not directly infringing on the patent. *Cf. id.* at 256-57 (divided claims "exist where patents are infringed only by aggregating the conduct of more than one actor" and "[w]here one person does not perform each and every step of the claimed process, no person directly infringes the claim"). Additionally, Bigfoot claims it does not have a sufficient connection or control over the e-mail recipients to infringe the 634 patent under a "joint performance" theory of direct infringement, *i.e.*, where there is "some connection" between two parties or entities who together infringe all steps of a claimed process, or where one party directs or controls the other party or entity to perform the remaining steps of a claimed process that it does not perform itself.

**1.     Direct Infringement under Section 271(a)**

Under 35 U.S.C. § 271(a), "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In what might be thought of as an analogue to the requirement that every element and limitation of a claim be present in the accused device for there to be infringement, when the claim at issue involves a method or process, direct infringement under section 271(a) does not occur unless all steps or stages of the claimed method are performed by the accused infringer. *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1321 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1174 (2006) (ruling that accused infringer could not have directly infringed process claims by selling or offering to sell claimed process where accused infringer sold only a service that performed some, but not all, of the claimed steps); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993); *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1278 (Fed. Cir. 1992) (emphasis in original) ("Claim 1 of the '619 patent, relied on to show double patenting, defines a *9-step process* of 'obtaining caffeine from green coffee.' Anything less than a process with all 9 steps is now that is claimed, and is, therefore, not patented");

7

1 *Monsanto Co. v. Syngenta Seeds, Inc.*, 431 F. Supp. 2d 482, 486-87 (D. Del. 2006) (liability could not
2 be found because the accused infringers, collectively, did not perform all of the steps of the claimed
3 process); *Hill v. Amazon.com, Inc.*, 2006 WL 151911, at *2 (E.D. Tex. 2006) ("to be liable as a direct
4 infringer, one must perform all of the steps of the claimed method")

5     Digital Impact argues that there is a triable issue of material fact about whether the three steps
6 ((1) receiving and opening; (2) determining; and (3) sending a response) may only be performed by a
7 human e-mail recipient. The plaintiff declares the "notion that a human E-mail recipient must take some
8 overt action to receive and open an E-mail is simply incorrect." Docket No. 75, at 10. It contends the
9 steps in the patent do not mention a human user at all, but instead describe a process taking place
10 remotely at an e-mail client, and thus the position that a human e-mail recipient must take overt action
11 to receive and open an e-mail misreads the limitations of the patent. Furthermore, Digital Impact
12 understands the claim construction of "E-mail client" to mean that human involvement is not always
13 necessary, because pre-programming could permit the e-mail client to process e-mails automatically.
14

15     The Court construed the disputed three steps to mean they are all actions undertaken by the "E-
16 mail client." *See* Docket No. 68. "E-mail client" means "a computer or similar electronic device with
17 software on it for receiving, processing and displaying E-mail messages and operated by a human user
18 either by virtue of previously programmed software that allows it to operate automatically or by virtue
19 of direct action of the human user." *Id*.

20     Digital Impact's focus on the extent of a human being's active involvement with the e-mail client
21 is somewhat misplaced. Digital Impact does not effectively challenge that the e-mail client, directly
22 controlled by a human being or not, is still an entity distinct from Bigfoot, the e-mail sender.

23     In addition, Digital Impact's attempt to read human involvement out of the process altogether
24 is not persuasive. The claim construction states that the e-mail client is a computer or electronic device
25 with e-mail processing software and is operated by a human user, and that the human user may
26 personally operate the software or opt to pre-program the software to automatically process e-mails.
27 This does not contemplate that the human user can ever be completely absent or that human involvement
28

8

is merely superfluous to the patented process. Even Digital Impact acknowledges that, at the very least, a human user must set up the e-mail client software to automatically process e-mails. As this step is performed by an entity other than Bigfoot, there is no direct infringement of the patent by the defendant because it does not perform the steps of the patented process. Therefore, Digital Impact does not raise a material issue that steps 2, 3, and 4 of claims 21 and 30 of its patented process are in fact performed by the e-mail client, and not the sender. Judgment as a matter of law is warranted on the claim of direct infringement.

**2.     Joint Performance Theory of Infringement**

Digital Impact next argues there is a triable issue of material fact about whether Bigfoot exercises sufficient connection or control over the e-mail recipients that it may be held liable under a "joint performance" theory of infringement. Its contention is that Bigfoot exerts sufficient control and connection to the e-mail recipients because it effectively constrains the human interaction involved, limiting human discretion to one of two options—either to open or not to open the received e-mail.

As we have seen, a party may not be liable for direct infringement under section 271(a) when it performs only some steps of a method or process claim and another entity performs the other steps. The exception to this is where there exists "some connection" between the two parties or entities and their aggregated conduct covers all the infringing steps of a process. *See Classen Immunotherapies, Inc. v. King Pharma., Inc.*, 403 F. Supp. 2d 451, 455 (D. Md. 2005) ("A party may be liable for infringement even when certain steps of the patented process are performed by a different party. However, there must be some connection between the entities performing the steps of the patent.") (citations omitted); *Faroudja Labs., Inc. v. Dwin Elec., Inc.*, 1999 WL 111788, at *5 (N.D. Cal. 1999) ("It is true that several district courts have found a party liable for direct infringement of a process patent even where the various steps included in the patent are performed by distinct entities. However, these cases indicate that some connection between the different entities justified that finding"); *Avery Dennison Corp. v. UCB Films PLC*, 1997 WL 567799, at *3 (N.D. Ill. 1997) (no direct infringement where different entities performed different steps of the process and not all of the entities were under the control of one

9

defendant).

This is sometimes referred to as the "joint performance" theory of direct infringement, which holds that a defendant may not avoid liability for infringing a process by having another perform some of the steps of the process where some degree of connection and control between the two entities exists. *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 683 (2006); *BMC Res., Inc. v. Paymentech, L.P.*, 2006 WL 306289, at *4 (N.D. Tex. 2006); *Hill v. Amazon.com, Inc.*, 2006 WL 151911, at *2 (E.D. Tex. 2006); *Applied Interact, LLC v. Vermont Teddy Bear Co.*, 2005 WL 2133416, at *4-*5 (S.D.N.Y. 2005). There is some disagreement amongst the district courts as to the degree of connection or control that must exist between two entities for there to be such "joint performance" as to allow a finding of direct infringement. *See generally* Sriranga Veeraraghavan, *Joint Infringement of Patent Claims: Advice for Patentees*, 23 SANTA CLARA COMPUTER & HIGH TECH. L.J. 211 (Nov. 2006). In this case, however, there is no need for the Court to determine how extensive "some connection" must be, as even under the most lenient standard, *i.e.*, the standard most favorable to Digital Impact's position, there is insufficient connection and control between Bigfoot and the e-mail recipients to support a finding of joint performance of the individual steps of the patent.

In arguing there is a triable issue of fact with respect to its "joint performance" theory of liability, Digital Impact relies primarily on *Hill v. Amazon.com, Inc.*, 2006 WL 151911 (E.D. Tex. 2006). In *Hill*, the plaintiff's patent described methods of storing product data on a main computer and a remote computer and periodically updating the constant data on the remote computer with data received from the main computer. *Id.* at *1. The defendant, Amazon.com, argued that since it operated the main computer, and its customers operated the remote computers, it had not performed all of the method's steps and so had not infringed the patent. *Id.* at *2. The court, however, found a triable issue of fact because Amazon.com, as a vendor, had a connection with its customers and had designed its website such that it directed the customers to perform several steps of the patented method. *Id.* at *3.

Digital Impact argues Bigfoot's e-mail marketing system is analogous to the method employed by Amazon.com. Indeed, it states that while Amazon.com merely constrained but did not eliminate its

10

1  customers' choice of actions, Bigfoot nearly eliminates its e-mail recipients' choices to the point where
2  their actions are nearly automatic. Digital Impact essentially contends that because Bigfoot is aware
3  of the fact that some recipients program their software to automatically receive, open, and process e-
4  mails, and still sends its e-mails to such recipients, it establishes a sufficient connection with the
5  recipients and exerts control over their actions.

6  This overlooks important distinctions. First, Amazon.com's customers performed the steps of
7  the patented method only once they were viewing Amazon.com's website. In other words, a clear
8  connection was established, both technologically and literally, between the customers and Amazon.com
9  once the customers purposely accessed and entered Amazon.com's website. In Bigfoot's case, there
10 are no similar affirmative steps taken by the e-mail recipients. Just as a telemarketer calls a residence
11 hoping a potential customer may answer, Bigfoot sends its marketing e-mails in the hopes that the
12 recipients will receive and open the e-mails. However, a connection between the two parties is not
13 established just because it is possible a pre-programmed e-mail client may receive and open the e-mail,
14 or analogously, because it is possible an answering machine may automatically answer the
15 telemarketer's call. Moreover, unlike Amazon.com and its customers, there is no vendor/vendee
16 relationship between Bigfoot and its e-mail recipients.

17 Furthermore, the *Hill* court noted that "the case law appears to require a showing that the
18 defendant and the third party are connected at least to the extent that the defendant must actually direct
19 the third party to perform the remaining steps of the method." *Hill*, 2006 WL 151911, at *2. In *Hill*,
20 once Amazon.com's customers were on its website, it discreetly directed them to perform the steps of
21 the patented method. *Id*. at *3. It designed its website such that customers had little choice but to
22 perform the steps. *Id*. While Digital Impact argues that Bigfoot, like Amazon.com, constrains its
23 "customers'" choices by somehow directing them to either open or not open the e-mails, this "constraint
24 of choices" cannot plausibly be stretched to amount to "direction" or "control." Just as the recipient of
25 unsolicited credit applications may predictably either open such letters or dispose of them without
26 inspection, there is no real sense that being limited to these two options means that the mass marketer
27 is "directing" or "controlling" the actions of the recipient, or more importantly, that there is any

28

11

"connection" between the two.

Finally, Bigfoot's e-mail recipients have the option of preventing Bigfoot's e-mail sensors from tracking their image-processing capabilities from the very start, by discarding the e-mails without opening them at all. Digital Impact thus fails to show that Bigfoot exerts a similar amount of direction or control over the e-mail recipients as Amazon.com had over its customers. Without there being "some connection" between Bigfoot and its e-mail recipients, or some direction or control by Bigfoot over the e-mail recipients, there is no joint performance of the steps of the patented process, and hence, no infringement under a "joint performance" theory of liability.

## CONCLUSION

Bigfoot has demonstrated that no genuine issue of material fact exists and that there is no triable issue to submit to a jury. Bigfoot has shown that it does not perform all of the steps of the 634 patent, and that it does not have sufficient connection with its e-mail recipients to be regarded as "jointly performing" the steps of the patent. Accordingly, the Court GRANTS Bigfoot's motion for summary judgment of non-infringement [Docket No. 71] of independent claims 21 and 30 of the 634 patent, and by extension all claims dependent on 21 and 30.

IT IS SO ORDERED.

September 18, 2007

                                          Saundra Brown Armstrong
                                          United States District Judge